IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

**LISA MARIE CASEY,**

  **Petitioner,**

v.              Case No. 1:19-cv-00244

**M.E. REHERMAN, Warden,**
**FPC Alderson,**

  **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

On April 3, 2019, Petitioner, an inmate who was then housed at the Federal Prison Camp in Alderson, West Virginia ("FPC Alderson"),[1] acting *pro se*, filed an Application Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in State or Federal Custody (hereinafter "Petitioner's section 2241 petition") (ECF No. 1). Petitioner paid the applicable $5.00 filing fee. This matter is assigned to the Honorable David A. Faber, Senior United States District Judge, and it has been referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

*Execution of Petitioner's initial sentence*

In 2007, Petitioner pled guilty to wire fraud and attempted bank fraud in the United States District Court for the Western District of Virginia. *United States v. Casey*, No. 1:06-cr-00071 (W.D. Va.). On July 11, 2007, she was sentenced to serve 96 months

---

[1] The petitioner is now incarcerated at FCI Aliceville in Aliceville, Alabama.

in prison, followed by a five-year term of supervised release. (ECF No. 13, Ex. 1, Attach. A). Her full-term release date was January 7, 2015. (*Id.*)

On June 19, 2011, a sentence computation was completed which adjusted Petitioner's projected release date for the inclusion of good conduct time ("GCT") that she had earned to that point. (ECF No. 1, Attach. 1 at 3). That calculation set Petitioner's projected release date on December 27, 2013. (*Id.*)

Petitioner subsequently completed the prison's Residential Drug Abuse Program ("RDAP") on April 27, 2012. (ECF No. 13 at 1-2). Consequently, she was considered by the BOP for early release under 18 U.S.C. § 3621(e), was provisionally granted a change of her projected release date to December 29, 2012, and was released to a Residential Reentry Center ("RRC") on July 3, 2012. (ECF No. 1, Attach. 1 at 4; ECF No. 13, Ex. 1, Attach. A at 11; ECF No. 15 at 2). However, prior to receiving early release under § 3621(e), Petitioner was required to complete a Transitional Drug Abuse Treatment ("TDAT") component while in the RRC. (ECF No. 17 at 3).

Petitioner alleges that, while at an RRC in Asheville, North Carolina, she was sexually harassed by a staff member and filed a complaint about that harassment. She was subsequently removed from the RRC, returned to FPC Alderson, and her early release date was removed in early August 2012. The BOP paperwork concerning this action, dated August 7, 2012, states that Petitioner "cannot fulfill the requirements for TDAT completion because [she] failed RRC due to multiple incident reports for serious infractions." (ECF No. 17 at 3). Petitioner disputed that she had received any disciplinary or incident reports while at the RRC. (*Id.* at 4; ECF No. 1, Attach. 1 at 6-7).

On February 14, 2013, Petitioner received a response to her complaints/grievances concerning the RRC and early release issues from the BOP Mid-Atlantic Regional Office, which stated as follows:

> This letter is in response to your January 22, 2013, correspondence in which you allege that staff at the Salvation Army Residential Re-entry Center (RRC) in Asheville, NC sexually harassed you and that you were improperly removed from the RRC, when you reported this alleged conduct. You indicate the removal resulted in your removal from RDAP, which in turn caused you to lose your early release date.
>
> We take all such allegations very seriously. While employees of the Salvation Army RRC in question are not Bureau of Prisons employees, upon receiving your allegations, we had our Re-entry staff visit the RRC to look into the matter. As a result of the interviews, there have been personnel changes at the RRC. In addition, in response to your letter and your administrative remedies about this situation, we have determined that you should be returned to the RRC to participate in RDAP. <u>Should you successfully complete the transitional services portion of the program, you will release early from your sentence.</u> In light of this development, and based on your request to withdraw your administrative remedies, we will close out your appeal once your transfer is complete. Additionally, we have asked institution staff to expedite the processing of your RRC transfer paperwork.

(ECF No. 17 at 7-8) (Emphasis added). Accordingly, the BOP made it clear that Petitioner would not receive early release of any length unless and until she completed the TDAT program. According to Petitioner, she was returned to the RRC on or about April 9, 2013, presumably completed the TDAT segment, and released early to supervision on July 17, 2013. (ECF No. 15 at 4).

*Petitioner's revocation sentence and filing of administrative remedies*

Subsequently, however, Petitioner was found to have violated the conditions of her supervised release and was sentenced to serve a term of 24 months in prison. (ECF No. 1, Attach. 1 at 16; ECF No. 13, Ex, 1, Attach. A). Petitioner was returned to BOP custody

3

and, on December 6, 2018, she was again incarcerated at FPC Alderson. (ECF No. 13 at 2 and Ex. 1, ¶ 10 and Attach. A and B).

On February 5, 2019, Petitioner filed Remedy ID No. 966938-F1 (BP-9) at FPC Alderson, seeking sentencing credit for having completed RDAP during her initial period of incarceration. A response was provided on February 14, 2019. (ECF No. 13, Ex. 1 at ¶ 12). On February 26, 2019, Petitioner appealed to the Mid-Atlantic Regional Office in Remedy ID No. 966938-R1 (BP-10). A response was provided on April 30, 2019. (*Id.*, ¶ 13).

Although Petitioner initiated the administrative remedy process, as evidenced above, she had not fully exhausted those remedies at the time she filed the instant petition on April 3, 2019. Her BP-10 was not even resolved until April 30, 2019, and her Central Office Administrative Appeal (BP-11), the final level of the administrative remedy process, was not even received until May 8, 2019. (ECF No. 17 at 1). It appears that the BP-11 was initially rejected. (*Id.*) Petitioner contends that she re-submitted a BP-11 in "June of 2019," and that she had not received any response thereto. (ECF No. 15 at 1-2).

## *Petitioner's § 2241 Petition*

The instant petition asserts that Petitioner was improperly denied a full year of early release under 18 U.S.C. § 3621(e), and that the BOP violated an agreement to expedite and reinstate her early release if she dismissed her earlier administrative remedies concerning her allegedly retaliatory removal from TDAT and the RRC. (ECF No. 1 at 6). She further contends that, had she been granted the full year of early release, she would not have been on supervised release when she violated the conditions thereof, and would not now be imprisoned. (*Id.*) Thus, she requests that she be granted a full year

of credit under § 3621(e) and/or that her 2018 revocation sentence be invalidated. (*Id.* at 7).

### *Respondent's Response*

On June 7, 2019, pursuant to the undersigned's Order, Respondent filed a Response to the § 2241 petition (ECF No. 13), asserting that Petitioner failed to properly exhaust her administrative remedies prior to filing her petition, and that the BOP did not abuse its discretion with respect to its actions in reducing Petitioner's sentence under § 3621(e).  Respondent further asserts that Petitioner has incorrectly asserted that, had she been granted a full one-year reduction of her sentence, her term of supervised release would have expired before the alleged violations which resulted in the revocation thereof. Rather, Respondent contends that the violations occurred on February 14, 2017, and July 26, 2017, and that, even had she been granted a full year of early release, her term of supervised release would not have expired until December 29, 2017.  (*Id.* at 7 n.4).

### *Petitioner's Reply and subsequent filings*

On June 19, 2019, Petitioner filed a Reply (ECF No. 14), in which she requested a stay of this § 2241 matter to enable her to finish the exhaustion process.  On July 17, 2019, Petitioner filed a "Counter Response" (ECF No. 15) and exhibits in support thereof (ECF No. 17) (hereinafter collectively referred to as "Petitioner's Sur-Reply"), in which she addresses the fact that her first BP-11 administrative remedy had been rejected by the Central Office and that she had been told that she could resubmit it within 15 days.  Her Sur-Reply further stated that she resubmitted the BP-11 in "June of 2019" and had not received any response from the BOP Central Office. (*Id.* at 1-2).

Petitioner contends that she did exhaust all administrative remedies, and that the BOP has breached its agreement with her concerning resolution of her early release issue.

She reiterates her contention that, had the BOP adhered to their agreement, she would not have been on supervised release at the time of her alleged violations. Petitioner has also filed additional documentation concerning her conditions of confinement at FPC Alderson, the Southern Regional Jail, and her current location, FCI Aliceville. The undersigned finds that this additional documentation is not relevant to the analysis of Petitioner's instant claim for habeas corpus relief.[2]

## ANALYSIS

### A. Exhaustion of administrative remedies.

Generally, a federal inmate must exhaust available administrative remedies before filing a writ of habeas corpus in federal court. *Boumediene v. Bush*, 553 U.S. 723, 782 (2008); *McClung v. Shearin*, 90 F. App'x 444, 445 (4th Cir. 2004) (an inmate must exhaust administrative remedies before filing a § 2241 petition); *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); *Martinez v. Roberts*, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a 2241 petition); *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757 (3d Cir. 1996) (same); *Greene v. Warden FCI Edgefield*, 2017 WL 1458997 (D.S.C. 2017) (same); *McCallister v. Haynes*, 2004 WL 3189469 (N.D. W.Va. 2004) (same). Although § 2241 does not contain a statutory exhaustion requirement, courts have consistently required prisoners to exhaust their administrative remedies, absent futility thereof, before seeking habeas review under § 2241. *See, e.g., Timms*, 627 F.3d at 530-33 (requiring exhaustion in a § 2241 matter); *McClung*, 90 F. App'x at 445 ("Federal prisoners must exhaust their administrative remedies prior to filing § 2241 petitions.").

---

[2] Petitioner has a separate civil action pending in this court before another Magistrate Judge concerning her conditions of confinement. *See Casey v. Southern Reg'l Jail*, 5:19-cv-00839 (S.D. W. Va.).

Exhaustion allows prison officials to develop a factual record and an opportunity to correct their own errors before being hauled into court. *Arbaugh v. Berkebile*, No. 5:10-cv-528, 2010 WL 5481198, at *3 (S.D. W. Va. Nov. 8, 2010), *report and recommendation adopted*, No. 5:10-cv-00528, 2011 WL 9387 (S.D. W. Va. Jan. 3, 2011) (citing *Jones v. Bock*, 549 U.S. 199, 204, (2007); *McCarthy v. Madigan*, 503 U.S. 140, 144–45 (1992)). Because the statute authorizing habeas corpus matters does not expressly require administrative exhaustion, the court retains discretion to disregard the exhaustion requirement in "pressing circumstances." *Reeder v. Phillips*, No. 1:07-cv-138, 2018 WL 243003, at *3 (N.D. W. Va. June 12, 2008). However, exhaustion should only be excused where administrative review would be futile. *Jaworski v. Gutierrez*, 509 F. Supp. 2d 573 (N.D. W.Va. 2007). Thus, "as a general rule, courts will deny judicial relief until all administrative remedies have been exhausted[,] and exhaustion will not be considered futile, "[u]nless the agency is certain to rule adversely." *Reeder*, 2008 WL 2434003 at *2-3.

The Federal Bureau of Prisons "(BOP)" provides a four-step Administrative Remedy Program for resolving grievances: (1) seeking informal resolution with a staff member; (2) submitting a formal grievance to the Warden on a "BP–9" form; (3) appealing the formal grievance to the Regional Director on a "BP–10" form within 20 days of the date the Warden signed the response to the grievance; and (4) appealing to the General Counsel of the Central Office on a "BP–11" form within 30 days of the date the Regional Director signed the response to the appeal. *See* 28 C.F.R. § 542.10-542.15; *Luczak v. Coakley*, No. 5:16-cv-189, 2018 WL 4326877, at *6 (N.D. W. Va. Aug. 3, 2018), *report and recommendation adopted*, No. 5:16-cv-189, 2018 WL 4305810 (N.D.W. Va. Sept. 10, 2018).

As discussed above, Petitioner filed Remedy ID No. 966938-F1 at the institutional level on February 5, 2019, seeking additional sentencing credit for having completed RDAP during her initial period of incarceration. (ECF No. 13 at 4 and Ex. 1 at ¶ 12 and Attach. D). A response was provided, and the remedy was closed on February 14, 2019. (*Id.*) Petitioner appealed the response to the regional level in Remedy ID No. 966938-R1 on February 26, 2019. (*Id.*) The regional level response was provided on April 30, 2019. (*Id.*) Respondent contends that Petitioner did not further pursue her administrative remedies, relying on the report contained in Exhibit 1, Attachment D, which was printed on May 8, 2019. (ECF No. 13 at 4). Petitioner, on the other hand, asserts that she sent two BP-11s to the Central Office: one which was received and rejected on May 8, 2019, and a second, which was sent "in June 2019" to which she had received no response. (ECF No. 15 at 1-2). Accordingly, Petitioner contends that she fully exhausted her administrative remedies with respect to this claim.

Nonetheless, Petitioner filed the instant § 2241 petition while her administrative remedy was pending at the regional level. Thus, she clearly had not exhausted the available administrative remedies prior to filing the instant petition, and she has not demonstrated any facts supporting a finding that such administrative remedy process was futile. Therefore, dismissal of her § 2241 petition is warranted. *See Jackson v. Saad*, No. 1:18-cv-01022, 2019 WL 321411, *1 (S.D. W. Va. Jan. 24, 2019) (Faber, S.J.) ("administrative remedies are to be exhausted <u>prior</u> to filing suit."). Moreover, a stay of this proceeding to enable exhaustion of administrative remedies is not appropriate.

### B.     Petitioner's claim for habeas corpus relief lacks merit.

Notwithstanding Petitioner's failure to properly exhaust her administrative remedies prior to filing the instant petition, she is not entitled to any relief on her habeas

corpus claim. As noted by Respondent's brief, under § 3621(e) and its companion regulations, the BOP has broad discretion to determine whether and how much of a sentence reduction should be granted if the inmate completes a substance abuse treatment program.

Specifically, the procedures for the RDAP program are contained in 28 C.F.R. § 550.50 *et seq.*, and BOP Program Statement ("P.S.") 5330.11, Psychology Treatment Program. The BOP has historically provided certain incentives to encourage inmate participation in RDAP. In 18 U.S.C. § 3621(e), Congress incentivized inmates to participate in substance abuse treatment by granting the Director of the BOP the discretion to reduce the sentences of certain inmates by **up to 12 months** upon proper completion of RDAP. Specifically:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B); *see also* 28 C.F.R. § 550.55 (explaining early release eligibility).

As Respondent contends, the Supreme Court has made clear that this permissive language grants the BOP "the authority, but not the duty" to grant early release to inmates who meet the criteria. *See Lopez v. Davis*, 531 U.S. 230, 241 (2001) (affirming that the BOP may exclude inmates, either categorically or on a case-by-case basis, subject to its obligation to reasonably interpret the statute in a manner that is not arbitrary or capricious); *Pelissero v. Thompson*, 170 F.3d 442, 444 (4th Cir. 1999) (the BOP has broad discretion to grant a sentence reduction under § 3621(e)); *Downey v. Crabtree*, 100 F.3d 662, 670 (9th Cir. 1996) (Congress intended to vest BOP with discretion concerning

whether to grant a sentence reduction to inmates who successfully complete a drug treatment program). (ECF No. 13 at 5).

Consequently, it is well-settled that inmates who successfully complete RDAP do not have a liberty interest in provisional early release. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right to be conditionally released before the expiration of a valid sentence."); *Zacher v. Tippy*, 202 F.3d 1039, 1041 (8th Cir. 2000) ("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."). (ECF No. 13 at 6). Accordingly, as asserted by Respondent, Petitioner's subjective expectation that she was entitled to an early release of a full year after completion of RDAP does not rise to the level of a protected constitutional entitlement. *See Mallette v. Arlington Cnty. Emp. Supp. Ret. Sys.*, 91 F.3d 630, 635 (4th Cir. 1996). (*Id.*) Therefore, Petitioner has not demonstrated that she is in custody in violation of the Constitution, laws, or treaties of the United States.

Furthermore, 18 U.S.C. § 3625 clearly provides that discretionary decisions by the BOP under 18 U.S.C. § 3621 are not subject to judicial review under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A). *See* 18 U.S.C. 3625; *see also, e.g., Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("[A]ny substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court. The BOP's substantive decisions to remove particular inmates from the RDAP program are likewise not subject to judicial review."); *Standifer v. Ledezma,* 653 F.3d 1276, 1279 n.3 (10th Cir.2011); *Lopez v. Rios*, 553 F. App'x 610 (7th Cir. Feb. 13, 2014) (discretionary denial of early release after completion of drug treatment program not reviewable under APA).

Petitioner's case is analogous to that of *Romero v. Meeks*, No. 14-cv-11, 2014 WL 4796579 (W.D. Pa. Sept. 26, 2014). In *Romero*, the petitioner ("Romero") was provisionally granted early release under § 3621(e) and was placed in an RRC for 180 days, during which time he was expected to complete the TDAT segment of the substance abuse treatment program. *Id.* at *2. However, Romero was subsequently deemed an "RRC failure," a "Community Treatment Services Failure," and "Drug Treatment Failure," and he was returned to custody at his prior BOP facility with his early release date being removed. *Id.*

The Pennsylvania federal court determined that Romero's early release eligibility was clearly provisional based upon his completion of the TDAT segment of the substance abuse treatment program. *Id.* at 5. The court further found that Romero had no liberty interest in a sentence reduction and, therefore, there could be no due process violation. Accordingly, the court further found that the BOP had not abused its discretion and that Romero was not entitled to habeas corpus relief based upon the denial of a sentence reduction and early release under § 3621(e). *Id.* at 6-7. Similarly, Petitioner's claim that the BOP violated an agreement with her and abused its discretion in denying her a sentence reduction of a full year under § 3621(e) does not rise to the level of a constitutional violation actionable under § 2241, or any other actionable claim subject to review by this federal court.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Petitioner's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and **DISMISS** this civil action from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendation" is hereby filed, and a copy will be submitted to the Honorable David A. Faber, Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (making of objections), and then three days (service/mailing), from the date of filing this "Proposed Findings and Recommendation" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendation" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party and Judge Faber.

The Clerk is directed to file this "Proposed Findings and Recommendation," to mail a copy of the same to Petitioner at FCI Aliceville and to transmit a copy to counsel of record.

March 20, 2020

Dwane L. Tinsley
United States Magistrate Judge